STOKER, Judge.
Ernest Barnes and Charles McFarlin, individually and as natural tutors for their minor sons, brought suit against William Wilhite seeking damages for assault, battery and false imprisonment. Gregory Barnes and Kenneth McFarlin, the sons of Ernest and Charles, attained majority before trial of this matter and were entered as plaintiffs in their own right.
After trial by jury, judgment was rendered in favor of Gregory Barnes and Kenneth McFarlin in the amount of $10,000 each and in favor of Charles McFarlin in the amount of $500. The claim of Ernest Barnes was dismissed and the judgment against him has not been appealed.
Defendant appeals, seeking reversal of the trial court’s judgment, and plaintiffs answer the appeal seeking damages for the filing of a frivolous appeal by defendant. For reasons set out below, we amend the award of damages and otherwise affirm the judgment of the trial court.
FACTS
The incident which gave rise to this litigation began just after midnight in the early morning hours of May 13, 1979. Mr. Wilhite owns a business located on Highway 27 approximately two miles south of Interstate 10 called “Wilhite’s Marine.” For several years preceding this incident, he has had problems with vandalism. In particular, the plate glass windows of his business have been shot out on more than one occasion. Mr. Wilhite stated that such a shooting had occurred during the early morning hours of May 12, 1979.
Around eight o’clock on the Saturday evening of May 12, Mr. Wilhite began patrolling the highway which runs past his business. He had his handgun, a .357 Colt Python with a four-inch barrel, in the truck with him and was drinking beer. Mr. Wil-hite was apparently trying to catch the vandals or prevent them from doing more damage.
Plaintiffs Greg Barnes and Kenneth McFarlin, ages seventeen and sixteen respectively at that time, had been out together that evening in Mr. McFarlin’s car since around seven o’clock. They also had consumed some beer, despite their ages. The boys had been socializing with other teenagers at various gathering places in downtown Sulphur.
Just after midnight, Mr. Wilhite was proceeding south on Highway 27 at about 35 miles per hour. Approximately one-half mile south of Interstate 10, and one and one-half miles north of his business, a ear passed him. Mr. Wilhite testified that he thought he heard a shot as the car passed. He speeded up to catch the car, purportedly for the purpose of writing down the license number.
Greg Barnes and Kenneth McFarlin were the occupants of the car with Kenneth driving. They agree that they passed Mr. Wil-hite while on their way home as he testified; however, they deny that any shot was fired. Mr. Wilhite’s and the boys’ versions of the incident after this point are substantially different.
*640 Mr. Wilhite claims that he had to speed up to 95 miles per hour in order to catch the car that passed him. As he was trying to write down the license number, the driver put on the brakes, forcing him to brake also. He states that the car then began swerving from side to side and eventually pulled into the parking lot of his business on the left side of the road. When Mr. Wilhite stopped behind the car, it pulled out and stopped again on the right shoulder of the road a short distance past his business. He followed the car, stopping behind it, and began writing down the license number.
Mr. Wilhite states that at that point he saw two people get out of the car and begin approaching him. He stepped out of the truck, reached under the seat to get his gun, and fired a shot in the air and informed the boys that he was making a citizen’s arrest. He then forced the boys to walk back to his place of business and call the police. Mr. Wilhite kept the gun in his possession during this time. Upon the boys’ request, he allowed them to call their parents.
Both Greg and Kenneth told substantially the same story. They passed a truck at a speed of about 45 miles per hour and maintained that speed. The truck caught up with them and pulled onto the right hand shoulder of the road about even with their back bumper. Thinking it must be someone they knew, the boys pulled onto the right shoulder of the road just past Wilhite’s Marine, got out of the car, and began walking towards the truck. Mr. Wilhite got out of his truck, pointed his gun at them and had them “spread eagle” on the trunk of the car. Both boys stated that Mr. Wilhite fired his gun into the ditch within a few feet of them to prove it was loaded.
Mr. Wilhite, while still brandishing the gun, forced them to walk to Wilhite’s Marine. Just before entering the store, he pressed the gun barrel against each one’s head in turn, forcing them to look at bullet holes in his plate glass. Once in the store, Mr. Wilhite told them to call the police and their parents.
Mr. Charles McFarlin arrived first, along with Kenneth’s older brother, Rayford. He testified that Mr. Wilhite appeared to be drunk and was waving the gun around. He feared that they could all be shot. Mr. McFarlin eventually persuaded Mr. Wilhite to put the gun down. Mr. Barnes then arrived followed a short time later by deputies from the Calcasieu Parish sheriff’s department.
After talking with the boys and Mr. Wil-hite, the deputies searched the car which had been occupied by Greg and Kenneth. No weapon was found, and Mr. Wilhite was taken into custody.
Mr. Wilhite was initially represented by counsel who withdrew from representation on October 22, 1982, before the trial which began on November 8, 1982, because Mr. Wilhite could not agree on payment.
Mr. Wilhite, who represented himself at trial and on this appeal, raises the following issues for resolution by this Court:
1. “Should the trial court be granted a continuance because of the failure of witnesses which had been timely subpoenaed to appear?
2. “Should the trial court allow judgment to be entered in favor of plaintiffs who were not present and available for confrontation by the defend- ■ ant on the date of trial?
3. “Should the trial court have allowed the defendant to present evidence establishing that he was in reasonable fear for his own safety?
4. “Should the trial court have instructed the jury concerning any finding that it could or did make as to defendant’s reasonable fear for his own safety?
5. “Was the verdict of the jury contrary to the law and evidence?
6. “Was the amount of the verdict excessive?”
Each of these issues is fully addressed below.
*641 I.
Mr. Wilhite contends that he should have been granted a continuance in accordance with the provisions of LSA-C.C.P. art. 1602 which states:
“A continuance shall be granted if at the time a case is to be tried, the party applying for the continuance shows that he has been unable, with the exercise of due diligence, to obtain evidence material to his case; or that a material witness has absented himself without the contrivance of the party applying for the continuance.”
Upon making his motion for a continuance on the morning of trial, Mr. Wil-hite stated that he had issued subpoenas for Greg and Ernest Barnes, plaintiffs, and Rayford McParlin, Kenneth’s brother. The subpoenas were not served as the Barnes family had moved to California and Ray-ford McFarlin had entered military service and was stationed in Mississippi.
Depositions had been taken of all three of these witnesses for all purposes at a time when Mr. Wilhite was represented by counsel. Both Greg Barnes and his father, Ernest Barnes, indicated in their depositions taken in December of 1979 that they were soon moving to California. Proceedings at trial indicate that Mr. Wilhite had copies of these depositions, thus he was on notice that the Barnes family had moved out of state.
Given the fact that Mr. Wilhite had information as to the whereabouts of Greg and Ernest Barnes, his actions did not show an exercise of due diligence to secure their presence at trial. In any event, both Greg and Ernest were fully cross-examined by Mr. Wilhite’s counsel at the taking of the depositions, so he did have the benefit of their testimony.
Rayford McParlin’s deposition was entered into evidence by Mr. Wilhite at trial. He also was fully examined by counsel for Mr. Wilhite. Rayford’s testimony at the deposition appears to be only cumulative. He was not present during most of the incident and added nothing that had not been testified to by other witnesses. In any event, it is not clear that Mr. Wilhite exercised due diligence to obtain Rayford’s presence at trial even though he did not have prior knowledge that Rayford would be out of state.
Based on the above facts, we hold that the trial court did not err in refusing to grant Mr. Wilhite’s motion for a continuance. He was in no way prejudiced by the absence of the three witnesses at trial.
II.
Mr. Wilhite claims that he was denied a fair trial due to the granting of judgment in favor of plaintiffs who were absent. As to the absent plaintiffs, only Greg Barnes won his case against Mr. Wil-hite. Judgment was given in favor of Mr. Wilhite dismissing Ernest Barnes’ claim.
We know of no law which requires the presence of plaintiffs at trial. As stated above, Mr. Wilhite had full access to the depositions of the absent plaintiffs and pri- or knowledge of their move to California. He states that it is not unreasonable to expect plaintiffs to be present at trial; however, such an expectation does not relieve him of the burden of securing the presence of any witness he wishes to testify-
In his brief on the appeal, Mr. Wilhite states, “It is interesting to note that if this had been a confirmation of default judgment and the plaintiffs had not bothered to come to the trial of the confirmation of the default their relief would not be granted.” This is not a correct statement of the law regarding confirmation of default. A plaintiff is required only to establish his case by prima facie evidence at a confirmation of default. His presence is not necessarily required. LSA-C.C.P. art. 1702.
The trial court did not err in granting judgment to an absent plaintiff.
III.
Mr. Wilhite argues that the trial court erroneously prevented him from presenting evidence in support of his claim *642 of self-defense. Although the trial court did rule that because self-defense had not been pleaded it could not be asserted at trial, the record clearly shows that Mr. Wil-hite was allowed to present evidence regarding his alleged fear for his own safety. Apparently this wide latitude was given in consideration of the fact that he represented himself.
Although we recognize that self-defense is not included in the illustrative list of affirmative defenses in LSA-C.C.P. art. 1005 which must be specially pleaded, self-defense is clearly an affirmative defense. An affirmative defense is defined in Black’s Law Dictionary, Revised Fourth Edition, as one “which, assuming the complaint to be true, constitutes a defense to it.”
In this case, Mr. Wilhite admits drawing his gun and persuading the boys to go to his business, but claims that he was acting out of a reasonable fear for his own safety. There is no doubt that self-defense was an affirmative defense in this case. As stated before, however, the trial court did allow Mr. Wilhite to testify regarding his fear at the time of the incident. Even though such evidence could and should have been excluded, Mr. Wilhite was given every benefit of the doubt.
IV.
The claim that the trial judge erred in failing to instruct the jury regarding self-defense is totally without merit. As stated before, self-defense was not pleaded and should not have been an issue in the case, but Mr. Wilhite was given every advantage. The trial court did in fact instruct the jury regarding self-defense and the privilege of citizen’s arrest. (Tr. pp. 298-301)
V.
In order to reverse the findings of the trier of fact, we must find it to be clearly wrong in its conclusions. If there is a reasonable factual basis for the findings, they are not to be disturbed. Arceneaux v. Domingue, 365 So.2d 1330 (La.1979).
The jury in this case had sufficient facts before it to find that Mr. Wilhite assaulted, battered and detained both Greg Barnes and Kenneth McFarlin and assaulted Charles McFarlin, all without a reasonable fear for his own safety or pursuant to a valid citizen’s arrest. The verdict was not clearly wrong.
VI.
Mr. Wilhite’s assertion that the damages awarded were excessive does have merit. Mr. Charles McFarlin’s award of $500 does not appear to be an abuse of discretion and will not be disturbed. However, in our opinion the awards to Greg Barnes and Kenneth McFarlin of $10,000 each do constitute a clear abuse of discretion.
The damages suffered by both boys are very similar. The testimony of the boys and their parents indicate that after this incident, the boys became very nervous. They also suffered from headaches and insomnia for at least one month and missed an unusual amount of school. Kenneth stated that this caused him to miss a final exam, and he went to summer school the next year in order to graduate with his class.
Each boy also curtailed his activities somewhat after this incident, staying home more than before. The Barnes family indicated that their decision to move to California was influenced in part by this episode.
Neither boy, however, received professional help, either medical or psychological. Apparently, Greg’s father had some education in psychology and felt professional help was not necessary for Greg.
The boys were held at gunpoint by Mr. Wilhite for approximately 45 minutes. Their fears must have been somewhat alleviated when they were allowed to call the police and their parents. Their unlawful detention lasted only about one hour, and the only evidence of battery is when Mr. Wilhite placed the gun barrel alongside each one’s head to force them to accompany him to look at the bullet holes in his building.
*643 In light of the above facts, we feel that an award of $5,000 is the highest amount reasonably within the discretion of the trier of fact in this case.
ANSWER TO APPEAL
Since defendant-appellant has prevailed in part on the appeal, plaintiffs-appellees are not entitled to damages for a frivolous appeal as provided in LSA-C.C.P. art. 2164.
CONCLUSION
For the foregoing reasons, the judgment of the trial court is amended to reduce the awards to Gregory Lane Barnes and Kenneth Wayne McFarlin from $10,000 to $5,000 each. The judgment of the trial court is affirmed in all other respects. Costs of this appeal are assessed equally between plaintiffs and defendant.
AMENDED AND AFFIRMED AS AMENDED.